UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| GARREN HANDSON, | ) | No. C15-1772RSL |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| OVERLAKE HOSPITAL MEDICAL CENTER, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the Court on "Defendants' Motion for Summary Judgment."
Dkt. # 26. The motion was filed on October 20, 2016, and properly noted for consideration on
November 11, 2016. Prior to the date on which the opposition was due, plaintiff's counsel was
granted leave to withdraw and plaintiff was given an additional sixty days in which to respond.
Dkt. # 38. Plaintiff timely filed an affidavit with attached exhibits under penalty of perjury. Dkt.
# 44. As part of their reply memoranda, defendants moved to strike portions of plaintiff's
response as inadmissible. Dkt. # 49 at 4. Plaintiff thereafter requested an order reopening
discovery and sought an extension of time in which to correct the evidentiary deficits identified
by defendants. Dkt. # 54. Without waiting for a response, plaintiff filed an "Answer in
Opposition" (Dkt. # 60) and supporting exhibits (Dkt. # 61-62). Defendants have moved to strike
those documents. Dkt. # 67.

Plaintiff's motion for an extension was granted. Although the Court found that plaintiff

failed to show good cause for reopening discovery, he was given an opportunity to supplement the evidence offered in opposition. Plaintiff was given until March 9, 2017, to file an amended affidavit with additional citations to and copies of any additional evidence he might have to support the statements contained in the affidavit. Dkt. # 65 at 2. Plaintiff either misunderstood or ignored the Court's order: he served discovery requests on defendants and third-parties. Dkt. # 66 and 68. When defendants objected, plaintiff began filing letters requesting a conference regarding the discovery dispute. Dkt. # 69 and 75. Defendants filed a motion for protective order. Dkt. # 70. On March 9, 2017, plaintiff filed an amended affidavit in response to the initial motion for summary judgment. Dkt. # 91.

This order resolves defendants' motion for summary judgment (Dkt. # 26), the motion to strike plaintiff's answer (Dkt. # 67), and the motion for protective order (Dkt. # 70). In ruling on the summary judgment motion, the Court has considered Dkt. # 26-32 (motion), Dkt. # 44, 80-91, and 94 (opposition), and Dkt. # 49-52 (reply). The Court has not considered the untimely and unauthorized "answer" filed on February 3, 2017.

Plaintiff asserts claims of failure to accommodate, race discrimination,[1] retaliation, wrongful discharge, negligent infliction of emotional distress, and outrage. Summary judgment is appropriate when, viewing the facts in the light most favorable to plaintiff, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. Defendants "bear[] the initial responsibility of informing the district court of the basis for [their] motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once defendants have satisfied that burden, they are entitled to summary judgment unless plaintiff identifies specific evidence and facts giving rise to a genuine issue for trial. Celotex

_____

[1] In the complaint, plaintiff asserts claims of "disparate treatment on the basis of plaintiff's race, disability and handicap." Dkt. # 1 at 9. Plaintiff has not offered any evidence or argument in support of a disability or handicap discrimination claim.

Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In addition, plaintiff may not avoid summary judgment simply by filing an affidavit that disputes his own prior statements and omissions or contains nothing more than conclusory allegations unsupported by factual data. See Nelson v. City of Davis, 571 F.3d 924, 927-28 (9th Cir. 2009); Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993). In short, summary judgment should be granted where plaintiff fails to offer evidence from which a reasonable jury could return a verdict in his favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and having considered the evidence in the light most favorable to plaintiff, the Court finds as follows:

## I. BACKGROUND

Plaintiff is a former Overlake Hospital Medical Center employee who worked as a PC analyst under the supervision of defendant Elizabeth Glithero. In April 2014, plaintiff injured his

---

[2] Defendants' request to strike portions of plaintiff's response affidavit (Dkt. # 44) is GRANTED in part and DENIED in part. Statements about which plaintiff has personal knowledge (such as the exertional requirements of his job) and arguments regarding what the evidence shows (such as the date on which plaintiff's computer was removed) have been considered. However, statements that are conclusory and unsupported by underlying facts (such as the assertion that plaintiff "endured harassment, stalking, false accusations and antagonizing remarks" for a four year period), statements that are not supported by the underlying documents (including certain characterizations of the investigative report), statements that constitute hearsay (such as what Joseph Wolfgram and Howard Binner said), and statements about which plaintiff has no personal knowledge (such as the subjective motivations of others) have not been considered.

back. When he notified Ms. Glithero that he may have ruptured a disk and needed a few days off from work, Ms. Glithero passed the information on to human resources. Dkt. # 83-5. When plaintiff again requested time off for the same injury, Overlake provided information regarding the Family Medical Leave Act and forms that needed to be completed before plaintiff would be allowed to return to work. Dkt. # 82-7. Plaintiff raised questions about taking FMLA leave with the director of information services, in particular the fact that Ms. Glithero had taken it upon herself to initiate the FMLA process. Dkt. # 44-8. Nevertheless, he submitted a leave of absence request (Dkt. # 29-1 at 4) and physical assessment form from his physician that limited plaintiff to light work until June 1, 2014 (Dkt. # 29-1 at 6-7). Ms. Glithero determined that plaintiff could not perform his job within the limitations specified by his doctor and that there was no light work available. Plaintiff was placed on FMLA leave and paid his full salary until he was cleared to return to work. Other than his concerns regarding the process, plaintiff did not voice any objection to paid FMLA leave at the time.

On or about December 8, 2014, Ms. Glithero noticed a device, called a wireless dongle, connected to plaintiff's work station. Plaintiff confirmed that he used the device to connect his computer to the public WiFi and sometimes used it to watch television. Ms. Glithero was concerned because plaintiff already had internet access through Overlake's secure network. In consultation with the director of IT services, Tracy Smith, Ms. Glithero had the computer confiscated and analyzed. On December 9, 2014, the internal examiner issued a report concluding that plaintiff had accessed websites that violated Overlake's internet usage agreement, had utilized the device to circumvent Overlake's auditing programs, had likely downloaded copyrighted materials, and may have "compromised Overlake Hospital's network by bridging our publicly accessible wireless network with our HIPAA regulated private network." Dkt. # 28-1 at 2. Plaintiff called in sick on December 10th. When he returned to work the next day, plaintiff told Ms. Glithero that her accusations of wrongdoing were false, that she was treating him with a degree of racial bias, that he was going to complain to human resources,

and that he would sue her and Overlake. Dkt. # 44 at 10. Plaintiff lodged a race discrimination complaint with human resources. Dkt. # 31 at ¶ 2.

On December 18, 2014, plaintiff met with Jennifer Garrepy in human resources ("HR"). Plaintiff thought they were going to discuss the complaint he had made against Ms. Glithero during the previous week, but Ms. Garrepy made clear that the topic was plaintiff's use of the wireless dongle. Dkt. # 27-1 at 53-55. Plaintiff insisted on filing a grievance against Ms. Glithero and refused to answer questions about the use of the dongle, maintaining that he did not understand what the issue was. Ms. Garrepy insisted that they focus on the potential misuse of corporate assets and prevented plaintiff from leaving the office, at one point putting one hand on the door and pushing him back into the room with the other. Dkt. # 27-1 at 56-58. When plaintiff forced his way out of the office, Ms. Garrepy called for Lisa Morten, the HR director. Ms. Morten was dismissive of plaintiff's claim that he felt threatened by Ms. Garrepy, but promised to investigate his complaints and get back to him. Dkt. # 44 at 14-15. That day, plaintiff had his wife contact the Equal Employment Opportunity Commission ("EEOC") to file a complaint "because [he] was being retaliated against and . . . had just been assaulted by an HR representative . . . ." Dkt. # 44 at 15.

On December 22, 2014, plaintiff met with Stephanie Banuelos from HR and Mr. Smith. Dkt. # 44 at 16. In response to questions regarding his use of the wireless dongle, plaintiff again claimed that he did not know what the investigation was about and refused to answer questions. Dkt. # 31 at ¶ 3. The same conversation occurred in another meeting that afternoon with Ms. Banuelos, Mr. Smith, and Ms. Morten. Id. When Ms. Banuelos and Mr. Smith met with plaintiff on December 29th, he requested copies of Overlake policies regarding recording meetings, employee rights, etc. Dkt. # 31 at ¶ 4. Ms. Banuelos agreed to provide the documents, but placed plaintiff on administrative leave. Id. A fourth meeting was scheduled at which the documents were provided along with a letter answering questions that were not addressed in written policies. Dkt. # 31 at ¶ 5. Despite being warned that refusal to respond to questions regarding his

use of a wireless dongle would result in termination for insubordination, plaintiff persisted. Id. He was fired effective December 31, 2014. Dkt. # 44-34.

Plaintiff filed this lawsuit on November 1, 2015. He asserts that Overlake failed to accommodate his disability, that Overlake and Ms. Glithero discriminated against him because of his race, that Overlake and Ms. Glithero retaliated against him, that he was wrongfully discharged, and that defendants caused him emotional distress. Plaintiff also alleges that his co-worker, Adam Daar, negligently and/or intentionally inflicted emotional distress. On five occasions, plaintiff was offended when Mr. Daar made comments or watched YouTube videos regarding news items that depicted violence against or disrespect toward minorities. These interactions are described more fully below.

## II. DISCUSSION

### A. Failure to Accommodate

Plaintiff argues that Overlake failed to accommodate his back injury in the spring of 2014 when it provided paid FMLA leave rather than a light duty assignment. In order to establish a *prima facie* case of failure to accommodate, plaintiff must show that "(1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that where available to the employer . . .to accommodate the abnormality." Davis v. Microsoft Corp., 149 Wn.2d 521, 532 (2003) (quoting Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 192-93 (2001).[3] Plaintiff argues that he was fully capable of performing the tasks set forth in Overlake's description of the PC Analyst position. Dkt. # 44-12 and 44-13. It is undisputed, however, that

---

[3] Prior to 2007, the employee also had to show that the measures were "medically necessary," but that requirement was abrogated by statute, as recognized in Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 29-30 (2010).

plaintiff's back injury prevented him from accomplishing the tasks he was expected to perform in the PC Analyst role. He twice requested time off because the job aggravated his back injury. Ms. Glithero's determination that the job could not be performed without exceeding the ergonomic and physical limitations imposed by plaintiff's doctor is supported by both her familiarity with the actual demands of the job and plaintiff's repeated requests for time off to give his back a chance to heal.

Plaintiff's main argument is that Overlake should have found a light duty assignment for him rather than placing him on paid FMLA leave. An employee is not entitled to his preferred accommodation, however. Pulcino v. Fed. Express Corp., 141 Wn.2d 629, 643 (2000). Rather, an employer must provide a reasonable accommodation for the disability. Snyder v. Med. Serv. Corp., 98 Wn. App. 315, 326 (1999). The specific facts of this case allow a finding as a matter of law that Overlake reasonably accommodated plaintiff's disability. Plaintiff had twice attempted to perform the PC Analyst tasks only to find that they hurt his back. Although plaintiff was cleared to perform desk jobs, Ms. Glithero had no such work available. Plaintiff was provided the accommodation he had twice requested – time off from work – and was granted full pay during his absence. There is no evidence that his three week leave caused a diminution in accrued benefits or other working conditions. Plaintiff cannot establish a *prima facie* case of failure to accommodate.

**B. Race Discrimination**

Plaintiff claims that Overlake and Ms. Glithero discriminated against him because of his race when they forced him to take FMLA leave and terminated his employment. To avoid summary judgment on his disparate treatment claim, plaintiff must present evidence from which a reasonable jury could find "an adverse employment consequence and discriminatory intent by [her] employer." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 767 (1998). In order to raise an inference of discriminatory intent, plaintiff may rely on direct evidence of the employer's intent or may utilize the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973). <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640 (9th Cir. 2003); <u>Kastanis v. Educational Employees Credit Union</u>, 122 Wn.2d 483, 491 (1993).

With regards to the decision to place plaintiff on FMLA leave rather than give him a light duty assignment, plaintiff has failed to show that he suffered an adverse employment action. As noted above, plaintiff was paid his full salary during his three weeks of leave, and there is no evidence that his benefits or other conditions of employment suffered because he was on FMLA leave. State and federal anti-discrimination laws require an actual adverse employment action, such as a demotion or adverse transfer, and are not triggered by a workplace change that is merely inconvenient or unwanted. <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1126 (9th Cir 2000). <u>See</u> <u>Alonso v. Qwest Commc'ns Co., LLC</u>, 178 Wn. App. 734, 746 (2013) ("An adverse employment action involves a change in employment conditions that is more than an inconvenience or alteration of one's job responsibilities, such as reducing an employee's workload or pay."). Nor has plaintiff linked his FMLA leave to race discrimination in any way. At various points in his response, plaintiff says that the leave was "a retaliatory tool" and/or was "done by Ms. Glithero of her own accord for only reasons she would know." Dkt. # 44 at 6 and 22. There is no indication that Ms. Glithero or Overlake chose to accommodate plaintiff's disability through a leave of absence because of his race.

With regards to his termination, plaintiff offers no direct evidence of discrimination toward African-Americans on the part of Overlake or Ms. Glithero. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998) (alteration in original). Plaintiff has not identified any clearly racist statements or actions that would suggest, without the need for inference, that these defendants were motivated by discriminatory animus. <u>Dominguez-Curry v. Nev. Transp. Dept.</u>, 424 F.3d 1027, 1038 (9th Cir. 2005). Thus, plaintiff must raise an inference of discrimination utilizing the <u>McDonnell Douglas</u> analysis for both his state and federal claims.

Under <u>McDonnell Douglas</u>, plaintiff must show that he is a member of a protected class, he was qualified for his position, he experienced an adverse employment action, and "similarly situated individuals outside [the] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." <u>Peterson v. Hewlett-Packard Co.</u>, 358 F.3d 599, 603 (9th Cir. 2004). Plaintiff is African American, he was qualified for his position, and he was terminated. He has therefore established the first three elements of a *prima facie* case. Plaintiff has not, however, provided any evidence that similarly-situated non-African Americans were treated more favorably in similar circumstances. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 641 (9th Cir. 2003). <u>See</u> also <u>Washington v. Boeing Co.</u>, 105 Wn. App. 1, 13-14 (2000). Plaintiff has not identified any other employee with secure network access who used a wireless dongle to access the public WiFi system at Overlake, nor has he identified any other employee who refused to answer questions during an investigation of potential wrongdoing. The evidence in the records simply does not raise an inference that race played a part in plaintiff's termination.

Even if a *prima facie* case of discrimination were established, defendants have articulated a legitimate, non-discriminatory reason for the termination: plaintiff refused to participate in an investigation of conduct that, at least on its face, appeared to be contrary to Overlake's policies and procedures. Any possible inference of discrimination raised by the *prima facie* showing therefore drops from the picture. <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1282 (9th Cir. 2000). In order to stave off summary judgment, plaintiff must show that a triable issue of fact exists regarding the veracity of defendants' explanation for the adverse action. He could do so by introducing evidence that Overlake's explanations are unworthy of credence or by affirmatively showing that a discriminatory reason more likely motivated the employer than the articulated non-discriminatory reasons. <u>Nicholson v. Hyannis Air Serv., Inc.</u>, 580 F.3d 1116, 1126-27 (9th Cir. 2009); <u>Scrivener v. Clark College</u>, 181 Wn.2d 439, 446 (2014).

Plaintiff essentially argues that his termination was unjustified because his initial use of the wireless dongle was authorized, there was no actual breach of Overlake's secured network and/or patient records, and the investigative report overstates the amount of work time plaintiff spent surfing the internet. Whatever the merits of these arguments, plaintiff gave up his opportunity to explain his actions to human resources when he refused to participate in the investigation. Plaintiff's underlying assumption -- that he was fired for using a wireless dongle – is incorrect. Rather, he was fired for refusing to answer questions about his use of the device during the employer's investigation of potential wrongdoing. Dkt. # 29-1 at 2.[4] Plaintiff has not provided any evidence from which a reasonable jury could conclude that Overlake's explanation for the termination decision was false or that race discrimination motivated his termination.

**C. Retaliation**

The basis for plaintiff's retaliation claim is not entirely clear. In the complaint, plaintiff alleges that Ms. Glithero falsely accused him of using an unauthorized dongle in retaliation for his complaints of race and disability discrimination and failure to accommodate. Dkt. # 1 at ¶¶ 26-27. The fact that plaintiff had a wireless dongle attached to his work computer is not in dispute, however. Nor does the record support an inference that the dongle investigation or plaintiff's termination were prompted by complaints of discrimination or failure to accommodate. Taking the evidence in the light most favorable to plaintiff, the following complaints were made:

1. After watching a YouTube video involving an African American woman with defendant Daar, plaintiff complained to Mr. Daar that he was confusing lack of opportunity with

---

[4] In the complaint, plaintiff asserts that he never refused to answer questions about his use of a wireless dongle. Dkt. # 1 at ¶ 31. The record does not support such an assertion. At various times, plaintiff insisted that he did not know what the investigation was about, wanted specific procedures used during interviews (recording, third-party witnesses, *etc.*), demanded production of information and documents, and/or refused to answer questions until his complaints of retaliation and assault were investigated. The result was a series of meetings in which plaintiff refused to answer questions regarding the use of a wireless dongle.

stupidity. Mr. Daar apologized. Dkt. # 27-1 at 47-48.

2. After Mr. Daar made a comment about plaintiff having to run through Ferguson, Missouri, with his hands up in the air, plaintiff lectured his co-worker regarding his lack of sensitivity. He also complained to Ms. Glithero, who said she would talk to Mr. Daar about it. Mr. Daar subsequently apologized. Dkt. # 27-1 at 49-52.

3. On May 2, 2014, plaintiff contacted Ms. Glithero's boss to discuss Ms. Glithero's decision to refer his medical leave requests to HR for an FMLA determination. Dkt. # 44-8. At a meeting with Ms. Glithero, plaintiff accused her of "trying to make [him] use all [his paid time off] so that [he] could not go on vacation that summer and trying to force [him] on FMLA so that [he] could exhaust that and ultimately she could fire [him]." Dkt. # 44 at 6.[5] Plaintiff apparently believed Ms. Glithero was using FMLA as a retaliatory tool.

4. On May 12, 2014, plaintiff filed a complaint with the Seattle District Office of the Department of Labor alleging wage fraud, violations of the Americans with Disabilities Act, and retaliation. Dkt. # 44-45.

5. Shortly after the wireless dongle investigation began, plaintiff complained to human resources that Ms. Glithero's accusations were false and racially motivated. Dkt. # 31 at ¶ 2; Dkt. # 44 at 10.

6. On December 18, 2014, plaintiff reported to both the human resources director and the EEOC that Ms. Garrepy had assaulted him. Dkt. # 44 at 14.

To make a *prima facie* showing of retaliation, plaintiff must show that (a) he engaged in statutorily protected activity, (b) there was an adverse employment action, and (c) retaliation was causally connected to or a substantial factor motivating the adverse action. Raad v. Fairbanks N.

---

[5] This version of events is the most favorable to plaintiff. His affidavit lacks clarity: it is possible that plaintiff is recounting two separate conversations, one between himself and Mr. Smith and the other between Mr. Smith and Ms. Glithero. If that is the case, there would be no admissible evidence regarding the latter conversation and no basis on which to conclude that Ms. Glithero knew that plaintiff was accusing her of wrongdoing in relation to the FMLA leave.

Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003); Kahn v. Salerno, 90 Wn. App. 110, 128-29 (1998). Once plaintiff makes the initial showing, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 618 (2002). Plaintiff bears the ultimate burden of persuasion and must present evidence that raises an inference of retaliation to withstand a motion for summary judgment.

Plaintiff cannot satisfy the elements of a *prima facie* case with regards to most of his complaints. First, the accusation that Ms. Garrepy assaulted plaintiff is not statutorily protected activity. The statutes at issue are aimed at the prevention of discrimination in the workplace, and this complaint does not constitute opposition to employment practices forbidden by Title VII or the Washington Law Against Discrimination. Alonso v. Qwest Comm'ns Co., LLC, 178 Wn. App. 734, 754 (2013). Second, although proximity in time between the protected activity and the adverse employment action can raise an inference of causal connection, the employer must be aware of the statutorily protected complaint for a rebuttable presumption of retaliation to arise. Currier v. Northland Servs., Inc., 182 Wn. App. 733, 747 (2014); Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). At the time Ms. Glithero initiated the wireless dongle investigation, she was unaware of plaintiff's first and fourth complaints. Plaintiff had not yet made his fifth and sixth complaints: they could not, therefore, have motivated the dongle investigation. Similarly, there is no indication that the individuals who made the decision to terminate plaintiff's employment were aware of his first or fourth complaints, or that they knew he had lodged a complaint with the EEOC.

There is evidence that could support findings (a) that Ms. Glithero knew of Mr. Daar's Ferguson comment and of his complaints regarding the award of FMLA leave when she initiated the dongle investigation and (b) that human resources and/or Mr. Smith were aware that plaintiff had accused Ms. Glithero of race discrimination and/or retaliation when they decided to terminate plaintiff's employment. Nevertheless, plaintiff's retaliation claim fails as a matter of

law. The inference of retaliatory motive that arises from the temporal proximity between plaintiff's complaints and the investigation/termination[6] has been rebutted by the legitimate, non-retaliatory reasons articulated by the employer. The evidence shows that plaintiff had a wireless dongle on his work computer and that he admitted using it to connect to the public WiFi and watch TV. Dkt. # 27-1 at 23-24. Ms. Glithero, in consultation with Mr. Smith, decided that additional information was required and arranged for a data security analyst to examine plaintiff's computer. The investigation report shows that Ms. Glithero's concerns were warranted and that plaintiff's use of the wireless dongle violated a number of Overlake policies. Plaintiff offers nothing other than temporal proximity to overcome the admitted facts that justified investigation or to support his hypothesis that Ms. Glithero was motivated by plaintiff's complaint against Mr. Daar or his objections to the way his medical leave was converted to FMLA leave six months before.

With regards to plaintiff's termination, plaintiff is essentially arguing that, by accusing Ms. Glithero of racial bias or retaliation after the investigation into the wireless dongle began, he immunized himself from any adverse action that would otherwise attend his conduct. That is not the law. The fact that an adverse employment action occurred after a complaint was lodged is "immaterial" when the employer was already contemplating the action. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (that an employer proceeds "along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). The investigation, which had already begun when plaintiff complained to HR about Ms. Glithero's motives, proceeded to completion, resulting in plaintiff's termination. Plaintiff's

---

[6] The causation analysis differs under Title VII and the Washington Law Against Discrimination. The United States Supreme Court has adopted a "but for" standard of causation for Title VII retaliation claims. Univ. of Tex. Sw. Med. Ctr. v. Nassar, __ U.S. __, 133 S. Ct. 2517, 2534 (2013). "Washington law imposes a looser standard, evaluating whether retaliation was a 'substantial factor' motiving the discharge." Knutson v. Wenatchee Sch. Dist. # 246, 2015 WL 4456245, at *19 (Wn. App. July 21, 2015) (citing Allison v. Hous. Auth., 118 Wn.2d 79, 95-96 (1991)).

refusal to answer questions regarding his use of the wireless dongle or to otherwise participate in the investigation beyond merely showing up for schedule meetings is a legitimate, non-retaliatory reason for the termination that rebuts the *prima facie* showing. Plaintiff has not established pretext and has not raised a triable issue of fact on his retaliation claim.

**D. Wrongful Discharge**

For the reasons discussed above, plaintiff's termination did not violate the Washington Law Against Discrimination. Plaintiff offers no other theory in support of his wrongful discharge claim.

**E. Emotional Distress Claims**

Defendants seek dismissal of plaintiff's negligent infliction of emotional distress and outrage claims on a number of grounds. Plaintiff acknowledges that his documentary evidence does not prove his emotional distress claims. Dkt. # 44 at 17. He provides no other response to defendants' motion other than to suggest that defendants have the burden of disproving the existence of any distress. Id. ("How can the defense speak of my emotional issues when they have no contact with me on a daily basis? The only people who can attest to my emotional state are my family and close friends who have supported me during this most difficult time."). Plaintiff has not provided any evidence of injury associated with the negligent infliction of emotional distress, and the Court finds that the facts of this case cannot support a claim of outrage.

//

//

# III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Dkt. # 26) and GRANTS defendants' motion to strike (Dkt. # 67). Defendants' motion for protective order (Dkt. # 70) is GRANTED in part and DENIED in part. Discovery is closed and defendants are entitled to a protective order, but the Court declines to award expenses. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

Dated this 24th day of April, 2017.

Robert S. Lasnik
United States District Judge